PATRICK O'MALLEY, Appellant, v. MICHAEL JORDAN *et al.*, Respondents.

St. Louis Court of Appeals, April 17, 1894.

The Evidence is considered, and *held* sufficient to support the verdict.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*T. J. Rowe* for appellant.

*Campbell & Ryan* and *J. P. Maginn* for respondents.

BOND, J.—Plaintiff sues as the indorsee of two promissory notes executed by defendants, one dated August 27, 1888, and the other December 16, 1889, for the sum of $300 each, the first payable to John O'Malley, or order, with interest from maturity at the rate of ten per cent., and the second payable to O'Malley Bros., or order, with interest from date at the rate of eight per cent.

Defendants Simon and Michael Jordan answered that they executed the notes in suit for the accommodation of O'Malley Bros., a firm composed of the plaintiff and his brother, John O'Malley, without any consideration moving to them as such makers.

The answer of the other defendants alleged, in substance, that the notes in suit were the last of a series of renewal notes originally indorsed for the accommodation of said Jordan Bros., and then stated "that said Jordan Bros. sold their stock of boots and shoes and fixtures in their store in said city of St. Louis to John O'Malley, brother and partner of plaintiff, at the agreed price of $1,900; that said John O'Malley, in making said purchase, was acting on behalf of the firm of O'Malley Bros.; that at the time of said sale said O'Malley Bros. and plaintiff, Patrick O'Malley, were liable on other accommodation notes for said Jordan Bros. to the amount of $1,900; * * * that it was then and there agreed between said John O'Malley, acting on behalf of O'Malley Bros. and plaintiff on the one part, and Jordan Bros. on the other, that the aforesaid liability of O'Malley Bros. in said sum of $1,900 was to be considered as paid and settled for by Jordan Bros. to O'Malley Bros. in payment of the purchase price of the said stock and fixtures; that thereupon O'Malley Bros. took possession of said stock and fixtures, and

sold the same, and applied the proceeds thereof to their own use."

The reply was a denial of the new matter set up in the answer.

The evidence tended to show the following facts:

During the years 1887 and 1888 the Jordan Bros. conducted a retail boot and shoe business in the city of St. Louis. The O'Malley Bros., a firm composed of plaintiff and his brother John O'Malley, were at the same time engaged in the business of carpentry and building in the city of St. Louis. On August 28, 1888, the firm of O'Malley Bros. was indorser of two notes for $300 each, payable to its order, executed by the defendants.

The two notes sued on were made by the same parties and were given in renewal of the former notes, which were then in the hands of the Citizens' Savings Bank. At this date the Jordan Bros. were indebted on notes aggregating $1,900. On a part of these notes, to wit, $850, the firm of O'Malley Bros., together with the other defendants, were liable as accommodation indorsers; on the remainder, the plaintiff and others were liable as accommodation indorsers. At this date the Jordan Bros. sold their retail shoe store by bill of sale to John O'Malley, who took possession of the same and operated it for four months at 1406 Grand avenue, and then removed it to 607 Franklin avenue, where he carried on the business until February, 1890.

The plaintiff in this case left St. Louis, June 30, 1888, for a visit to Ireland, which lasted about ninety days.

There was evidence tending to show that, before his departure to Europe, Patrick O'Malley stated to Simon Jordan that he, O'Malley, "wanted it to be distinctly understood that they were to be protected on

those notes," and discussed with him the propriety of an assignment to John O'Malley for the benefit of those notes by the Jordan Bros., in case they were not able to meet their obligations.

Against the objection of plaintiff the court permitted witness Michael Jordan to give the following answer to a question as to what consideration, if any, was received from John O'Malley for the bill of sale to him, to wit: "The only consideration that I received from Mr. John O'Malley was a cancellation of this indebtedness of $1,900, those notes in suit amongst the number."

There was a trial and a verdict for defendants from which the plaintiff has appealed, and he assigns as error the reception of incompetent evidence, the giving of erroneous instructions, and that the verdict is not supported by substantial evidence.

It is urged in support of the objection to the evidence, tending to show the consideration received by Jordan Bros. for the bill of sale of their retail shoe store to John O'Malley, that such evidence rested upon the declarations of John O'Malley with reference to a transaction outside of the scope of the copartnership business in which the firm of O'Malley Bros. was engaged, and was therefore inadmissible in the absence of any showing of authority on his part to make such declarations.

. The law is elementary that each partner has implied authority to bind all the others only in relation to the business of the firm. Parsons on Partnership, sec. 83; Pollock on Partnership, p. 45.

If the act is not within the apparent scope of the business, the firm is not bound except upon evidence of express or implied authority of all the partners or ratification by them. Such authority or ratification

makes the firm liable. *Deardorf v. Thacher*, 78 Mo. 128; *Pease v. Cole*, 53 Conn. 53.

In this case it is admitted that the notes in suit, although made subsequently to the sale to John O'Malley, were renewals of the notes which bore the indorsement of the firm of O'Malley Bros. The first notes expressed a contingent liability of the firm of O'Malley Bros. Hence any transaction had with one of the members of that firm, looking to the payment or security of this liability, was in furtherance of the interests of the copartnership.

Again, according to the testimony of the vendors, their purpose in making the sale of the shoe store to John O'Malley was to pay the entirety of the obligations on which the firm of O'Malley Bros. and also Patrick O'Malley were bound as indorsers. There was also inferential evidence that Patrick O'Malley had arranged for this transaction before his departure to Europe.

We, therefore, hold that the trial court did not err in receiving the evidence adduced by defendant as to the character and purpose of the sale to John O'Malley, and as to his declarations and statements in consummation thereof.

The appellant also complains of the instruction given by the court at the instance of defendant, wherein the question as to whether John O'Malley acted in behalf of the firm of O'Malley Bros. in effecting the purchase of the shoe store was submitted to the jury.

The answer to this objection is that there was evidence, as seen above, that John O'Malley acted in behalf of the firm of O'Malley Bros. and upon authority given by the other member of the firm; the court was, therefore, warranted in submitting this issue to the jury.

The appellant is, however, in no position to com-

plain of the instruction on the ground stated, since he requested and the court gave an instruction on his behalf submitting the same issue to the jury in the following words: "Unless you further find from the evidence that said John O'Malley, when he made said purchase and agreed to pay said notes, was not acting for himself individually but was acting for the copartnership of O'Malley Bros." The rule is well established that, "where a party has asked instructions similar to those given, he is in no position to complain." *Whitmore v. Supreme Lodge Knights and Ladies of Honor*, 100 Mo. 47; *Stevens v. Crane*, 116 Mo. 408.

We are not prepared to say that the verdict in this case was wholly unsustained by any substantial evidence. It is not our province to weigh the evidence in actions at law. Our conclusion is that the judgment herein should be affirmed. All concur in the result.

### CONCURRING OPINION.

ROMBAUER, P. J.—The only question entitled to consideration, which is raised by this appeal, is whether there is any substantial evidence in this record that John O'Malley, in purchasing the stock from Jordan Bros., acted within the scope of his powers as a partner of the firm of O'Malley Bros. so as to bind Patrick O'Malley, a member of said firm, who is the present plaintiff. If he was acting within the scope of his powers, then it follows as a legal result that the two O'Malleys became primarily liable on the renewal of these notes, regardless of their positions thereon. In that event the Jordans were mere accommodation makers, and the other defendants accommodation indorsers for the O'Malleys on the renewal notes, as charged in their respective answers. While the evidence on this main question is not very satisfactory, I

am not prepared to say that it was altogether insufficient. Agency in these cases, like in all others where its proof depends on controverted facts or admissible inferences, is a question of fact to be determined by the jury. Conceding that there was substantial evidence on that subject, the evidence was undoubtedly submitted to the jury on proper instructions; hence we would not be warranted in reversing the judgment. In these views Judge BIGGS concurs.