THE FORT SCOTT, WICHITA & WESTERN RAILWAY COMPANY v. J. M. FORTNEY et al.

1. CONFLICTING TESTIMONY —*Review*—*Evidence Sustains Finding.* This court does not weigh conflicting testimony, where there is enough in support of the verdict to fairly sustain it; and *held*, that in this case there is evidence showing that the defendant company was operating the railroad on which the engine ran from which the fire started, and that sufficient facts were shown to uphold the finding against the defendant, under ¶ 1321 of the General Statutes.

2. QUESTIONS —*Answers, When not Required.* It is not error for the trial court to refuse to require answers to questions which are either unsupported by the evidence or not fairly within the issues being tried.

3. INSTRUCTION —*Language Used by Court and Party.* A party cannot take advantage of the use by the court of language which that party has asked the court to use in an instruction requested by it.

*Error from Bourbon District Court.*

THE opinion states the nature of the action and the material facts. Judgment for the plaintiffs, *Fortney* and another, at the October term, 1889. The defendant *Company* comes to this court.

*J. H. Richards,* for plaintiff in error; *C. E. Benton,* and *Dillard & Padgett,* of counsel:

1. Under the pleadings in this case, the operating company only is liable. That company which solely employs, directs and controls the officers and men who are engaged in the operation of the defendant line of road as an entirety, so that the relation of employer and employé and master and servant exists, and to which the principle of *respondeat superior* can be applied, is the company which must respond in damages, without regard to the mere ownership or equipment. *St. L. Ft. S. & W. Rld. Co. v. Willis,* 38 Kas. 336; also, see, 2 Thomp. Neg., p. 892; Cooley, Torts, pp. 531, 533; *K. P. Rly. Co. v. Wood,* 24 Kas. 619; *Union Trust Co. v. Cuppy,* 26 id. 754; *St. L. W. & W. Rly. Co. v. Curl,* 28 id. 623; *A. T. & S.*

*F. Rld. Co. v. Gibson,* 42 id. 34; *A. T. & S. F. Rld. Co. v. Davis,* 34 id, 209; *S. K. & P. Rld. Co. v. Towner,* 41 id. 78.

2.  The operating company was guilty of no culpable negligence in the operation of its engine, as alleged in the petition.   The rule that "a party must adhere to the theory adopted at the trial," is no less binding in *nisi prius* than in appellate courts.   Elliott, App. Proc.—"Waiver," p. 627, and "Holding to Trial-Court Theories," etc., p. 410.   And it is held that asking instructions upon one definite and designated theory precludes the party from a different one.   *Louisville &c. Co. v. Wood,* 113 Ind. 544, 564; *Doty v. Gillett,* 43 Mich. 203; Elliott, App. Proc., pp. 410, 414.

3.  The court erred in not sustaining the demurrer to the evidence.   This argument is manifestly involved and fully covered in the discussion of the previous assignments; for it is obvious that if plaintiffs below failed in their proof, either as to the operation or the negligence charged, as contended by us, the demurrer should have been sustained; otherwise not, as there was no other issue upon which some evidence was not introduced.

4.  The jury was governed by passion and prejudice, as evinced by an excessive verdict, untruthful answers to special questions, and refusal to answer others.   As to the verdict: It is shamefully excessive—for a larger amount even than proof showed the whole farm to be worth.   As to the answers of the jury to the special questions: Every answer except No. 5, without a single exception, was either baldly and boldly against all testimony upon the question embraced, or evasive, and thus substantially subversive of the truth as established by that testimony.   This and other courts have many times held that not only evasive and untrue answers imply passion and prejudice, but the very attempt to do either likewise implies it.   *St. L. Ft. S. & W. Rld. Co. v. Willis,* 38 Kas. 331, citing *U. P. Rly. Co. v. Fray,* 31 id. 739.

5.  The court erred in refusing to require the jury to specifically and directly answer the questions, as requested upon the return of the verdict and special findings.   This court

has declared the law governing courts in such cases in language with no two meanings. *U. P. Rly. Co. v. Fray*, 31 Kas. 739; *St. L. Ft. S. & W. Rld. Co. v. Willis*, 38 id. 331, and other cases.

6. The court erred in giving and refusing certain instructions. See *K. P. Rly. Co. v. Butts*, 7 Kas. 308; *Toledo &c. Rld. Co. v. Larmon*, 67 Ill. 68; 2 Wood, Rly. Law, § 326.

7. The defendants in error were guilty of contributory negligence. Our position is, that upon the whole of the evidence, of both plaintiffs and defendant below, plaintiffs were guilty of contributory negligence. The plaintiffs admit that the company had previously burned off the right-of-way. They do not deny the statements of defendant's witnesses, in charge of the right-of-way, that it was burned off, and "specially to protect plaintiffs' farm." Moreover, it was proven by many witnesses, and not denied by plaintiffs below, that the orchard itself was umbrageous with weeds, grass, and dead trees. Everything invited a fire, from the point of its incipiency to its uttermost ends of destruction. Tumble weeds and grass and other combustible matter strewed the whole way. Upon the part of plaintiff in error, there was diligence and special effort to protect the Fortneys' premises.

*W. R. Biddle*, for defendants in error:

The first question in this case is: Does this record affirmatively show that the pleadings upon which the case was tried are incorporated in the record? We think the case does not show such fact. A case-made must show affirmatively and beyond question all of the pleadings upon which the case was tried. A citation of authorities upon this proposition is hardly deemed necessary, as the court has frequently decided this point.

1. If the pleadings copied into this record were the pleadings upon which the case was tried, they show, first, the allegations that the plaintiff in error is a corporation duly organized and doing business as such in the state of Kansas, operating a railway from the city of Fort Scott westerly

through Bourbon, Allen and Woodson counties, in this state. That allegation is not denied by the answer. It is, therefore, an admitted fact in this case, that the plaintiff in error is a railway corporation duly organized, and operating a railway in the state of Kansas. The presumption is that the admitted owner of a railroad operates it. And the burden to prove to the contrary is upon the defendant, and this is a question for the jury. *Peabody v. Oregon Rly. & N. Co.*, 26 Pac. Rep. 1053; *Ferguson v. Railroad Co.*, 63 Wis. 145.

2. If the Missouri Pacific is a corporation, and in fact owns the stock and bonds, does it make any difference whether the road is sued in the name of the Fort Scott, Wichita & Western, or the Missouri Pacific? The liability of one would not increase the liability of the other, nor would it decrease it. It would be identically the same person. To sum it up, it would be in this shape: One railroad owns another because it owns all of the stock and bonds. If you sue one you sue the other; if you sue the other you sue the one, both being identical. The best test of the force of the evidence tending to prove that the Missouri Pacific is a corporation and was operating this line of road is by asking this question: Would the evidence in this case justify a jury in finding against it, if it were the defendant? It would be doubtful, indeed.

This court has decided that a stock or bondholder, though a railroad corporation, is not responsible for the negligence of the corporation issuing the stock and bonds. *A. T. & S. F. Rld. Co. v. Cochran*, 43 Kas. 225. This last case also decides that, to entitle a railroad corporation to own the stock and bonds of another company, the lines of the two companies must connect.

3. It is claimed that the operating company was guilty of no negligence in the operation of its engines, as alleged in the petition. This question was determined by the proofs in the case, and the jury found against the corporation. The supreme court of this state has frequently decided that this is purely a question for the jury.

4. It is claimed by counsel for plaintiff in error that the

jury was governed by passion and prejudice; and upon this question they adduce as evidence of the fact that the verdict was excessive; that the jury made untruthful answers to special questions, and refused to answer others. We regard the decision in the court below, that no question was proper under the evidence with reference to the existence of any other corporation, or as to whether these employés were paid by any other corporation, or whether this road was operated by any other railroad corporation, as correct, because there was no evidence whatever in any sense that proved the existence of any railroad corporation. We challenge this entire record for a *scintilla* of proof that there is a railroad corporation existing in this country under the corporate name of the Missouri Pacific Railroad Corporation. The jury answered that they did not know whether the Missouri Pacific Railway Company was a railroad corporation engaged in operating a system of railroads in the state of Kansas or not. They could have answered the question under this evidence, "No," because, as we have suggested, no evidence of its incorporation was introduced.

5. Counsel claim that the court erred in giving and refusing instructions. We do not care to discuss this matter further, except to say that all of the evidence in this case had reference to appliances in use on the different railroads spoken of. There was no evidence with reference to appliances known to railroads.

6. Plaintiff in error claims that the defendants were guilty of contributory negligence. As a matter of law, this question of contributory negligence was submitted to the jury. Evidence was offered on both sides by men of long experience, as to the value of these trees destroyed, as to the value of the fence and other property destroyed. There was a wide divergence of opinion as to the amount of damage. The jury weighed the testimony fairly, and made a very moderate estimate of the damage.

Upon the question of contributory negligence, the old rule

was, "When it can be shown that the injury would not have happened except for the culpable negligence on the part of the injured, concurring with that of the other party, no action can be maintained." This was the old and proper rule upon the question of contributory negligence, and this is the rule that should and does obtain to-day. It is laid down in *Pennsylvania Rly. Co. v. Aspell*, 62 Am. Dec. 323. The court will observe that the negligence must be culpable, and that it must be concurring with that of the other party. It is always a question for the jury.

The opinion of the court was delivered by

ALLEN, J.: The defendants in error, as plaintiffs, brought this action to recover damages, which they allege they had sustained by reason of a fire which they allege the defendant company, in the operation of its railroad, in Bourbon county, had negligently permitted to escape from its engine, and which they aver spread from a point near the right-of-way of the defendant's road to their lands, and damaged and destroyed their property, and claimed damages in the sum of $5,150.57. The action is brought under ¶ 1321 of the General Statutes. The jury returned a general verdict in favor of the plaintiffs for $2,150.27 damages, and $400 attorneys' fees. The railroad company brings the case here, and assigns various errors, which we will consider in their order. Before proceeding with this matter, however, the defendants in error object to any consideration of the matters presented by the plaintiff in error, for the reason that the case does not affirmatively show that the pleadings upon which the case was tried are incorporated in the record. While there is some force in this objection, we are of the opinion that it fairly appears that the case was tried on the pleadings now before us. Elaborate briefs are presented, and counsel for the plaintiff in error strenuously contend, first, that the wrong party was sued; that the record shows that at the time of the destruction of plaintiffs' property this line of railroad was operated by the

Missouri Pacific Railway Company, and not by the defendant company, and that the operating line only is liable. We have no fault to find with the legal proposition stated by counsel, that the operating company alone is liable, but various witnesses were examined upon this question. The leading counsel for plaintiff in error was introduced as a witness on behalf of the Fortneys. He testified that the original name of the company which owned the line of road was the St. Louis, Fort Scott & Wichita; that this company operated the road up to the time of a foreclosure, sale, and reorganization, which took place in June, 1887, and thereafter it was called the Fort Scott, Wichita & Western Railway Company; that the Missouri Pacific Railroad Company then purchased it and became the owner of all its bonds and all its stock, and some time after that the Missouri Pacific began to operate it. His testimony shows that the manner in which the Missouri Pacific purchased the road was by purchasing all its stock and bonds; that George Gould was the president of the company, and was also an officer of the Missouri Pacific; that the road is operated as a branch of the Missouri Pacific; that the Fort Scott, Wichita & Western Railway Company is a corporation, and that the Missouri Pacific owns the road because it owns the stock and bonds of the company; that some of the officers of the Fort Scott, Wichita & Western are the same as the officers of the Missouri Pacific, but not all of them. No lease or other contract between the Missouri Pacific and the Fort Scott, Wichita & Western is shown in the evidence, and there seems to be no question as to the fact that the ownership of the road is in the corporation which was named as defendant in the court below. There was testimony on the one hand, though somewhat indefinite, to the effect that the name, Fort Scott, Wichita & Western, was marked on the rolling stock used on the road, and that tickets bearing the same name were sold to passengers traveling over the line. On the other hand, employés of the company testified that they were employed by and received their pay from the Missouri Pacific Railroad Company.

I. We think that the question of fact as to which company operated the road was fairly left to the jury, and that there was evidence to uphold their verdict in that respect. As has often been decided by this court, we do not weigh conflicting testimony which has been fairly considered by a jury. If Mr. Richards's statement that the Missouri Pacific Railway Company owns all the stock and bonds of the Fort Scott, Wichita & Western, it is very difficult to perceive what substantial difference it makes as to the name under which the owner of the road is prosecuted, as the ultimate liability, if any, must fall on the same party in either event.

II. The second proposition contended for is, that the uncontroverted evidence shows affirmatively that the operating company was not guilty of any neglignce; that the evidence clearly shows that the engine from which it is claimed the fire was communicated was properly constructed and managed; that plaintiffs in their petition stated certain facts which it is claimed constituted negligence; that the defendant met the case presented by the plaintiffs with conclusive opposing evidence, and that the plaintiffs then recovered on a different theory from that originally presented. We are unable to perceive that there was any substantial change in the plaintiffs' theory of the case. It is alleged in the petition that the company, by its employés, negligently permitted sparks and coals of fire to escape from said engine, which set fire to the grass on or near the right-of-way of said road, from which the fire was communicated that passed over the adjoining lands upon the lands of the plaintiff, and caused the damage complained of. The particular mode of escape, and the particular negligence of the defendant through which it occurred, are not stated in the petition. We think the averments and the testimony were consistent.

III. The third error assigned — that the court ought to have sustained the demurrer to the evidence — is but a summing up of the first two errors claimed.

IV. The fourth error claimed by the plaintiff in error is, that the jury was governed by passion and prejudice, as evi-

denced by special verdict, untruthful answers to special questions, and refusal to answer others. There was testimony before the jury to the effect that the 373 best apple trees were worth $10 apiece, and that the others were worth $4 to $5 each, besides evidence as to the other items of damage claimed. There was also evidence showing that these trees were mostly killed; that there were in all 607 dead trees in the orchard. Taking the plaintiffs' evidence alone, and it would have supported a much larger verdict than the jury in fact rendered. We are not able to say that, even in our own judgment, the verdict was excessive, much less that it contains internal evidence of passion and prejudice on the part of the jury.

V. It is claimed that the court erred in refusing to require the jury to specifically and directly answer certain questions; these questions being answered "We do not know," or in words to that effect. These questions were with reference to the employment and payment of the engineer and fireman by the Missouri Pacific Railway Company. The proof introduced on these points was somewhat vague and unsatisfactory, and we do not think that the jury could properly be required to make more specific answers under the testimony before them.

VI. Complaint is also made of the instructions, and among others the following:

"If you should find that the defendant's engine was at the time supplied with the best appliances known to railroad companies in this country to prevent the escape of coals or sparks, that such appliances were at the time in good repair and condition for such appliances, in view of their use and all the other circumstances, then the defendant would not be liable."

The particular language complained of in this instruction is, that it required the defendant's engine to be supplied with "the best appliances known to railroad companies in this country." It is contended that railroad companies are only bound to use the best appliances in use, not the best that may have been discovered, and known to other companies. The language used by the court is subject to criticism, but the ob-

jectionable words we find incorporated in an instruction asked by the defendant company itself, and it is a familiar rule that, where a party requests the court to give a certain charge which is erroneous or misleading, he cannot complain if the court accedes to his request.

The sixth instruction asked by the plaintiff in error reads as follows:

"A railroad company is chartered to use engines and cars to carry passengers and freight at a great rate of speed and in large quantities, and is authorized to use extraordinary means and power to accomplish these purposes; but, while so using them, it is the duty of said company to construct its machines and conduct its road by the use of the best known appliances, and so as not to damage the property of the people living along the line of its right-of-way by reason of its failure to do so."

The court also gave the jury the following instruction, which is also complained of, viz.:

"A railway company is chartered to use engines and cars to carry men and freight at great speed and in large quantity, and is authorized to use extraordinary means and power to accomplish this purpose; but, while so using them, it is its duty to so construct its machines as not to damage the property of the people living upon the line of its right-of-way; and if you should find from the evidence that the fire which burned the plaintiffs' property was caused from coals or cinders dropped from defendant's engine, and you should find that the engine used by the defendant was constructed upon such principle that, if in perfect order and properly operated, no coals or cinders would escape therefrom so as to cause such a fire, then the jury would be authorized to find that some defect existed in the engine."

The use of the word "dropped" in connection with coals or cinders is criticised, as well as the general tenor of the instruction, but we are unable to detect any substantial error in it. While some other minor matters are discussed in the briefs, we fail to perceive any materiality in them, and on the whole record we are satisfied with the conclusions reached by the court below, and the judgment will be affirmed.

All the Justices concurring.